# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**GERALD WEBSTER,**
**Claimant Below, Petitioner**

**FILED**

July 20, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-0201** (BOR Appeal No. 2052197)
　　　　　　　　　(Claim No. 2016014540)

**WEST VIRGINIA MEMORIAL GARDENS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Gerald Webster, by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia Memorial Gardens, Inc., by Lisa Warner Hunter, its attorney, filed a timely response.

The issue on appeal is the authorization for additional diagnoses in the claim. The claims administrator denied Mr. Webster's request to include the diagnoses of herniated disc, stenosis of the lateral recess of the lumbar and thoracic/lumbosacral radiculitis as compensable components of the claim. On August 25, 2017, the Workers' Compensation Office of Judges affirmed the decision of the claims administrator.  This appeal arises from the Board of Review's Order dated February 26, 2018, in which the Board affirmed the decision of the Office of Judges.  The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Webster, a maintenance worker employed by West Virginia Memorial Gardens, Inc., filed a Report of Occupational Injury or Disease form on December 1, 2015. Mr. Webster alleged that he injured his back after continued bending and lifting during work. The injury was listed as a strain injury. It was noted that the injury aggravated a prior injury/disease. X-rays of Mr. Webster's lumbar spine revealed some accentuation of the lordosis, which suggests the

1

possibility of muscle spasm. Michael Ramsay, M.D., of Summersville Regional Medical Center concluded that the x-ray results were negative for an acute bony type of injury. The injury was listed as suspicious for degenerative disc disease at lower levels and possible muscle strain. Mr. Webster was diagnosed as suffering from acute chronic low back pain with sciatica, muscle spasms and lumbar strain. He was prescribed medication for his symptoms and discharged.

Mr. Webster was examined by Joseph Dawson, M.D., on December 8, 2015. Dr. Dawson indicated Mr. Webster's positive symptoms included lower back pain, radicular pain, posterior aspect of lower extremities, tingling of the limbs and numbness of the limbs. Dr. Dawson assessed lumbar disc disorder with myelopathy. Based upon his evaluation of Mr. Webster, Dr. Dawson requested authorization for Mr. Webster to undergo a lumbar MRI with and without contrast. On December 17, 2015, the claims administrator issued an Order conditionally accepting the diagnosis of lumbar strain as a compensable condition. Mr. Webster was advised that he was conditionally eligible for medical treatment and expenses related to his injury. Temporary total disability benefits were paid from December 1, 2015, through January 29, 2016.

A January 7, 2016, Lumbar MRI Report from Charleston Area Medical Center revealed a moderate sized diffuse disc bulge, protruding 9mm, causing spinal stenosis and bilateral exit foraminal and lateral recess narrowing at L5/S1; 1 cm diffuse disc bulge with spinal stenosis and bilateral foraminal and lateral recess narrowing at L4/5 and diffuse disc bulge with central 6 mm protrusion causing moderate spinal stenosis and lateral recess narrowing at L3/4.

Mr. Webster was re-examined by Dr. Dawson on January 12, 2016. Dr. Dawson listed his active problems as being bulging discs at the right L3-L4, L4-L5 and L5-S1 and intervertebral disc disorder with lumbar myelopathy. Mr. Webster reported that his pain started after he was bent over flipping vases at work. Dr. Dawson recommended a referral for a neurosurgeon consultation. He also recommended that Mr. Webster exercise three times per week.

On February 16, 2016, Mr. Webster was examined by Matthew Walker, M.D., due to Dr. Dawson's referral. Dr. Walker reviewed the latest MRI and indicated that Mr. Webster's L4-5 level was the most symptomatic level of his lumbar spine. He appeared to have a recurrent disc herniation toward the right at L4-5, which fit with his right L5 radicular symptoms, although Mr. Webster had significant stenosis at L3-4 and L5-S1. Mr. Webster stated that he would prefer nonoperative treatments. Dr. Walker prescribed pain medication and indicated that Mr. Webster should next consider a transforaminal epidural steroid injection if progress was not made.

On March 18, 2016, Paul Bachwitt, M.D., completed an independent medical evaluation and physical examination on March 14, 2016. Dr. Bachwitt noted Mr. Webster's medical history of a work-related low back injury while working for a different employer in 2008, but Mr. Webster did not file a workers' compensation claim. He underwent back surgery performed by Frederick Armbrust, M.D., but the procedure was paid for by Medicaid. Dr. Bachwitt also noted that Mr. Webster had a work-related low back injury in 2014 and underwent an L4-L5 laminectomy performed by Dr. Walker. Mr. Webster was off from work for six months as result of the surgery. Mr. Webster reported to Dr. Bachwitt that he developed low back pain due to repetitive bending while working as a groundskeeper. He was bent over flipping 2,500 vases at

work when the pain started. Dr. Bachwitt reviewed x-rays taken in his office and reported that the x-rays revealed marked degenerative changes at L5-S1. The lateral view showed marked narrowing at L5-S1. There were significant changes at L4-L5 with anterior osteophytes at L3 and L4. Dr. Bachwitt diagnosed lumbar sprain/strain superimposed on pre-existing degenerative changes and two prior lumbar surgeries. Dr. Bachwitt did not see any indication for additional lumbar surgery and he further commented that if lumbar fusion is performed, it would be related to the two prior back surgeries rather than the November 25, 2015, injury.

Mr. Webster returned to Dr. Walker on March 24, 2016, at which time Dr. Walker noted that his condition had not changed. A right L5 transforaminal epidural steroid injection was recommended. Dr. Walker indicated that if Mr. Webster did not show improvement following the injection, then surgical intervention could be considered. Mr. Webster agreed to undergo the right L5 transforaminal epidural steroid injection. Dr. Walker explained that the difficulty would be that Mr. Webster has had two previous disc operations at L4-L5 and he has disc degeneration from L3-S1 with stenosis at each level with herniations, so it may be difficult to plan for a small operation.

On May 2, 2016, the claims administrator granted authorization for a right L5 transforaminal epidural steroid injection and a follow-up evaluation. Mr. Webster underwent the right lumbar transforaminal epidural steroid injection for his right lower extremity radiculopathy on May 18, 2016. However, in a follow-up evaluation with Dr. Walker on June 9, 2016, Mr. Webster reported that he did not get much help with the injection. He did indicate that his pain was more tolerable than before. Dr. Walker reviewed the January 7, 2016, MRI report, which showed multi-level disc degeneration from L3-S1 with disc herniations at each level with significant L3-4, L4-5, and L5-S1. Dr. Walker concluded that any surgical intervention would have to involve a multi-level lumbar decompression. Mr. Webster declined surgery as an option.

Mr. Webster was re-examined by Dr. Bachwitt on August 9, 2016. Dr. Bachwitt reiterated his previous opinion that any surgery, as recommended by Dr. Walker, would be related to his two prior lumbar surgeries rather than the November 25, 2015, compensable injury. Pursuant to range of motion studies, Dr. Bachwitt recommended 5% whole person impairment with the observation that any prior awards for the 2014 spine injury would be subtracted from his current recommendation of impairment. By Order of the claims administrator dated September 1, 2016, Mr. Webster was granted a 5% permanent partial disability award. Mr. Webster protested the claims administrator's decision.

Mr. Webster continued to treat with Dr. Dawson, as he had done for several years. During examinations, Dr. Dawson noted that Mr. Webster's lumbar spine was tender with paraspinal muscle spasms. On September 27, 2016, Dr. Dawson completed a Diagnosis Update Request form indicating the primary diagnosis was herniated disc. The secondary conditions were lumbar sprain, stenosis of the lateral recess of the lumbar area, and thoracic/lumbosacral radiculitis.

On February 9, 2017, the claims administrator denied Dr. Dawson's request to add the conditions of herniated disc, stenosis of the lateral recess of the lumbar area and

thoracic/lumbosacral radiculitis as compensable components in the claim. Mr. Webster protested the claims administrator's decision.

In its Final Order dated August 25, 2017, the Office of Judges noted that Mr. Webster has a history of two prior low back injuries, the first of which occurred in 2008 and resulted in back surgery. His second low back injury occurred in 2014 and he underwent an L4-5 laminectomy performed by Dr. Walker. After reviewing the evidence of record, the Office of Judges found that almost two years prior to Dr. Walker's request for a diagnosis update and one year prior to Mr. Webster's compensable injury, Dr. Walker had diagnosed Mr. Webster as suffering from stenosis of the lateral recess of the lumbar and thoracic/lumbosacral radiculitis. The Office of Judges reasoned that because, in Dr. Dawson's opinion, the diagnoses preceded the compensable injury of November 25, 2015, they cannot be logically included in the current claim. The Office of Judges further concluded that the record is not sufficiently clear to establish that Mr. Webster's bulging disc at multiple levels is attributable to the November 25, 2015, injury. As such, the claims administrator's February 9, 2017, Order was affirmed. The Board of Review adopted the findings of fact and conclusions of the Office of Judges and affirmed its Order on February 26, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The objective medical evidence does not establish a new injury of a herniated lumbar disc, stenosis of lateral recess of the lumbar spine, or thoracic or lumbosacral neuritis or radiculitis occurring from the November 25, 2015, work-related injury. The Board of Review properly affirmed the lower rulings.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 20, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum

Justice Loughry, Allen H., II suspended and therefore not participating